**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TERI L. SCHULTE, | ) | |
| | ) | CASE NO. 4:13-cv-01521 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Teri L. Schulte ("Schulte") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On April 20, 2010, Schulte filed an application for SSI alleging a disability onset date of April 1, 1995. (Tr. 12.) Her application was denied both initially and upon reconsideration. *Id*. Schulte timely requested an administrative hearing. *Id*.

On February 8, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Schulte, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 12.) On February 17, 2012, the ALJ found Schulte was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 20.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age thirty-eight (38) at the time of her administrative hearing, Schulte is a "younger" person under social security regulations.  *See* 20 C.F.R. § 416.963(c).  Schulte has a limited education and no past relevant work. (Tr. 19.)

### *Relevant Hearing Testimony*

The ALJ posed the following hypothetical question to the VE:

> If you assume someone the same age, vocational background, and educational background as the claimant who is able to perform light work; can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; is limited to work that has no rapid production rate or pace work; and only occasional interaction with the public and occasional interaction with coworkers; are there any jobs available in the national economy that a person with those limitations would be able to perform?

(Tr. 53.)

The VE responded that such an individual could perform the following jobs: housekeeping cleaner, some of the lighter jobs in the commercial cleaner category, and automatic car wash attendant.  (Tr. 54.)

In a second hypothetical, the ALJ added the following limitations to the first hypothetical: occasional kneeling, crouching, or crawling; avoid concentrated exposure to

extreme heat or cold; avoid exposure to workplace hazards such as dangerous machinery or unprotected heights; and, work limited to simple, routine tasks involving only simple, work-related decisions with few workplace changes. (Tr. 55.) The VE testified that such an individual could still perform the previously identified job of housekeeping cleaner, as well as those of an inspector-hand packager and a small products assembler. (Tr. 55-56.) If the second hypothetical required a sit/stand option, only the job of small products assembler would remain, but with greatly reduced numbers. (Tr. 56-57.) The final hypothetical was the same as the second with the additional limitation that the person would be off task twenty percent of the time. (Tr. 57.) The VE testified that such an individual would be unemployable. *Id.*

### III. Standard for Disability

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not

disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV. Summary of Commissioner's Decision

The ALJ found Schulte established medically determinable, severe impairments due to mood disorder, post-traumatic stress disorder, anxiety disorder, diabetes, edema, and diabetic neuropathy. (Tr. 14.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* Schulte was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 16.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Schulte was not disabled. (Tr. 20-21.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is

not mentioned, the Court cannot determine if it was discounted or merely overlooked.");

*McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL

2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9,

2010).

## VI. Analysis

In her sole assignment of error, Schulte argues that the ALJ's RFC determination did not

adequately describe her mental limitations, resulting in the opinion being unsupported by

substantial evidence. (ECF No. 14 at 2, 7-14.) The Commissioner contends that the ALJ

extensively reviewed the record and reasonably determined the RFC. (ECF No. 15 at 13-19.)

The RFC determination sets out an individual's work-related abilities despite their

limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an

administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.927(d)(2). An

ALJ "will not give any special significance to the source of an opinion on issues reserved to the

Commissioner." *See* 20 C.F.R.§ 416.927(d)(3). As such, the ALJ bears the responsibility for

assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.946(c).

"Judicial review of the Commissioner's final administrative decision does not encompass

re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at

\*\*21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680

F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir.

2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)). Moreover, a

plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not

provide basis for overturning the RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at

\*\*21-22.

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

The ALJ found that a hypothetical person with Schulte's impairments could "perform light work as defined in 20 CFR 416.967(b) except that she can occasionally climb ramps or stairs, can never climb ladders, ropes or scaffolds, and can occasionally kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold and extreme heat and avoid exposure to workplace hazards such as dangerous machinery and unprotected heights."[1] (Tr. 16.) As for the mental aspects of the RFC, the ALJ further found that the hypothetical person should be "limited to work with no rapid production rate or piece work and is limited to simple, routine tasks involving only simple work-related decisions, with few workplace changes and only occasional

---

[1] Schulte does not dispute the ALJ's findings with regard to her physical impairments. (ECF No. 14 at 3.)

interaction with the public and coworkers." (Tr. 16.)

Schulte argues that the last limitation – that allowed occasional interaction with the public and coworkers – is inadequate because it does not incorporate findings by two State Agency psychologists, Andrea Van Estenberg, Ph. D., and John Waddell, Ph. D.[2]  (ECF No. 14 at 7-14.) Specifically, she argues that Dr. Van Estenberg found Schulte was markedly impaired in her ability to relate to others, including colleagues and supervisors.[3]  (ECF No. 14 at 5, *citing* Tr. 492.)  She further points out that Dr. Waddell found she had marked limitations in maintaining social functioning, including in her ability to interact appropriately with the general public. (ECF No. 14 at 10, *citing* Tr. 505, 510.)  Though not mentioned by Schulte, in the area of social interaction, Dr. Waddell found she was only moderately limited in her ability to accept instructions and respond to appropriately to criticism from supervisors and in her ability to get along with co-workers or peers.  (Tr. 510.)  Also, Dr. Waddell found Schulte was not significantly limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  *Id*.  Finally, he determined that "[c]laimant would be limited t[o] tasks that do not require much interaction with others, but she can engage appropriately in simple social interactions, as when she is with treating sources or at a CE." (Tr. 512.)

---

[2]  Dr. Van Estenberg examined Schulte, while Dr. Waddell is a non-examining source.

[3]  Schulte also averred that "Dr. Van Estenberg's mental status examination showed depressed mood, occasional suicidal thoughts, auditory hallucinations, social isolation, decreased appetite, increased sleep, a lack of energy and motivation, anxiety, crying outbursts and tearfulness." (Tr. 486, 488-89.)  She found Schulte experienced flashbacks and nightmares and had difficulties with memory, concentration and attention. (Tr. 489.)  The Court finds this statement inaccurate to the extent it suggests that these are Dr. Van Estenberg's own findings rather than a recitation of Schulte's self-reported symptoms.

8

Schulte's argument is built on the premise that the RFC, which limits her to only "occasional" interaction with the public and co-workers, is inconsistent with the marked limitations in social interaction described by Dr. Waddell and Dr. Van Estenberg. However, Schulte cites no supporting regulation or authority. The Court has no basis for finding that an individual with marked limitation in her ability to relate to others could not, nonetheless, *occasionally* do so. The term "occasionally" in the social security context generally is defined as occurring very little to no more than one-third of the time. *See, e.g.*, SSR No. 85-15 ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact."); SSR 96-9p ("An ability to stoop occasionally; *i.e.*, from very little up to one-third of the time, is required in most unskilled sedentary occupations."); SSR 83-10 ("'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday ..."); *Woodard v. Comm. of Soc. Sec.*, 2013 WL 592382 at \*4 (S.D. Ohio, Feb. 14, 2013) ("occasionally being defined in various Social Security Rulings as something a claimant can do for up to one-third of the work day").

The ALJ explained that she was assigning "significant weight" to the opinions of Dr. Van Estenberg and Dr. Waddell. (Tr. 19.) Though Schulte claims that the ALJ must have disagreed with the portions of their opinions cited, this Court finds no inherent inconsistency. That being said, an ALJ is not required to adopt every opinion expressed by a non-examining medical expert, even when an ALJ overall accords that opinion great weight. *See Taylor v. Colvin*, 2013 WL 6162527 at \* 14-15 (N.D. Ohio Nov. 22, 2013) (finding ALJ was not required

9

to adopt every opinion of ME "by virtue of the fact that, overall, he gave [the ME's] opinion great weight"). *See also White v. Comm'r of Soc. Sec.*, 2013 WL 4817673 at * 16 (N.D. Ohio 2013) (noting that "[t]he fact that the ALJ did not incorporate all of Dr. Castor's restrictions, despite attributing significant weight to his opinion, is not legal error in and of itself"); *Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133 at * 11 (N.D. Ohio March 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given great weight"); *Lambert– Newsome v. Astrue*, 2012 WL 2922717 at * 6 (S.D. Ill. July 17, 2012) (noting the fact that the ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale"); *Irvin v. Astrue*, 2012 WL 870845 at * 2–3 (C.D. Cal. March 14, 2012) (finding that although the ALJ gave great weight to a medical source opinion, he did not err in implicitly rejecting one limitation from that opinion).

Finally, Schulte argues that the RFC determination is not supported by substantial evidence because it did not accommodate her need to be off task twenty percent of the time due to panic attacks. (ECF No. 14 at 13.) She avers that the ALJ did not discuss her panic attacks or the frequency with which they occurred. *Id*. Schulte cites no medical evidence of record beyond her own self-reporting that demonstrates the frequency of her panic attacks or her allegation that

said attacks would cause her to be off task twenty percent of the time.[4] (Tr. 486.) The ALJ found that Schulte's statements were not credible to the extent they were inconsistent with the RFC finding. (Tr. 17.) The ALJ pointed to multiple instances of drug-seeking behavior and exaggeration of limitations as part of her finding. *Id*. As such, "[t]he ALJ could properly decide not to incorporate evidence of [the claimant's] mental impairments into his examination of the vocational expert because the ALJ is only required to incorporate, as part of that examination, evidence that is deemed credible." *Justice v. Comm'r SSA*, 515 Fed. Appx. 583, 588 (6th Cir. 2013) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."))

Here, Schulte has not argued that the credibility assessment failed to comport with the regulations. As such, Schulte's argument amounts to an invitation for this Court to conduct an improper *de novo* review of the evidence. The ALJ was not bound to incorporate Schulte's uncredited allegations into the RFC or the hypothetical question. The VE's testimony was given in response to a hypothetical that reasonably reflected all the limitations that the ALJ found valid and credible. Therefore, the VE's testimony constitutes substantial evidence capable of supporting the finding that Schulte could perform jobs existing in significant numbers in the

---

[4] Schulte points to her self reports of frequent panic attacks made to Dr. Van Estenberg during the consultative examination (T. 486) and a medical record dated December 2, 2008 wherein she again self reported suffering from anxiety with panic attacks. (Tr. 753.) The latter record gives no indication as to the alleged frequency of the attacks. *Id*. Schulte also fails to cite a single medical opinion suggesting that she would be off task twenty percent of the time. In fact, Dr. Waddell found that Schulte was only moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 510.)

11

regional and national economies.

As such, Schulte's sole assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.


/s/ Greg White
U.S. Magistrate Judge

Date: April 24, 2014